## Richmond.

BROWN v. THE COMMONWEALTH.

DECEMBER 9th, 1886.

Absent, LEWIS, P.

CRIMINAL PROCEEDINGS—*Rape—Case at bar.*—The evidence here does not warrant the verdict of the jury finding the accused guilty of rape.

Error to judgment of circuit court of Cumberland county, refusing writ of error to judgment of county court of said county, rendered 28th April, 1886, sentencing Fleming Brown to confinement in the penitentiary for the period of fifteen years, the jury, on the trial of the indictment against him for rape, having found him guilty and fixed that term for his confinement. To several rulings of the court at the trial the prisoner excepted; and the court having certified the evidence, he obtained a writ of error and *supersedeas.*

Opinion states the case.

*Wm. M. Flanagan,* for the plaintiff in error.

*R. A. Ayers,* Attorney-General, for the Commonwealth.

FAUNTLEROY, J., delivered the opinion of the court.

Upon a transcript of the record of the said trial the prisoner petitioned the circuit court of Cumberland county for a writ of error and *supersedeas* to the judgment of the county court, and assigned the following errors: 1. The refusal of the said

county court to quash the writ of *venire facias* issued in the case; 2. The refusal of the said court to require Dr. William Fuqua, a witness, to make an examination of the person of the prosecutrix; 3. The refusal of the court to allow the special plea to be filed; 4. The refusal of the court to set aside the verdict of the jury and award a new trial.

These errors assigned are all set out in three bills of exceptions, which, having been fully considered by the circuit court of Cumberland county, the writ of error and *supersedeas* prayed for by the prisoner in his said petition was denied and refused, by an order entered at the May term, 1886, of the said circuit court.

The case is here upon a writ of error awarded by one of the judges of this court to the aforesaid judgment of the circuit court affirming the judgment of the said county court complained of by the plaintiff in error.

We will notice the third and last assignment of error, first and only, because it goes to the merits of the case, and disposes of it, upon the evidence in the record. We think the verdict of the jury finding the prisoner guilty and fixing the period of his confinement in the penitentiary of the State for fifteen years at hard labor is wholly unwarranted by the evidence— even the testimony of the prosecution, by itself considered.

The chief and, indeed, the only material witness for the Commonwealth is the prosecutrix herself—Lettie Lipscomb— and her statement bears the impress of absurdity and falsehood upon its face; and the verdict of the jury, and the sentence of the court based thereon, afford another illustration of the fact that, in trials for this offence, the jury and the court may, with much ease, be imposed upon; and that they are often over-hastily carried to the conviction of the person accused of this particular offence by the testimony of false and interested or malicious witnesses. False charges of this kind have, unhap-

pily, been too common and too successful in all ages. The inducements to falsehood and revenge are powerful; hence the great importance of careful inquiry and exact knowledge of facts and motives in all proceedings of this character. See Wills' Cir. Evidence, 151.

Lettie Lipscomb, the victim of the alleged rape, and the prosecutrix for the Commonwealth, is a girl of 14 or 15 years of age, and weighed 151 pounds; the prisoner is a youth weighing 115 pounds, and, on the day of the alleged rape, was unwell. Lettie Lipscomb testifies that on the 25th day of May, 1885, she was at her father's house; that her father and mother and sister were at the "plant bed," some 368½ yards from the house; that Fleming Brown, the prisoner, came to the house and asked her for a chew of tobacco; she replied that she would try to find him some, and searched about the house and failed to find any, and went up stairs to attend to dinner; that afterwards Fleming came to the foot of the stairs, and called her, and asked her if she had found the tobacco, when she replied she had not; that when Fleming came to the house, and came in, he threw his arms around her, and afterwards he came up stairs, and, while she was sitting on the top step, he carnally knew her, against her will and by force. On cross-examination she stated, that she had, twice before, been examined in court on the facts of the case, and that when Fleming Brown had connection with her she knew perfectly well what was going on, that is, her senses were clear; that she made no outcry, because she was sick; that she made no effort to push him down the steps, nor did she try or attempt to close her legs, so as to keep him from her; that she did not know that men and women had connection with each other; that after Fleming left she took up the dinner and set the table, and had dinner ready when her father

and mother came from the plant bed. That Fleming Brown, the prisoner, lived on the premises, and made a crop in partnership with her father.

Pius Lipscomb, the girl's father, stated that he was making a crop with Fleming Brown, and when he was sent to jail the crop had been pitched; and that, since he had been in jail, he, Pius, had completed the crop, and had all the proceeds, and expended them. The house he lived in was a story and a half high, and the steps leading up stair were tolerably steep; the lower room was about eight feet pitch

The girl's mother testifies in the case for the Commonwealth; but what she testifies is immaterial, and does not alter or affect the conclusion from the evidence of the girl, herself; that the prisoner did not use any violence, threat or force towards her; and that if he had any connection with her at all, it was with and by her consent.

We are of opinion that the circuit court erred in denying the writ of error prayed for in the petition of the appellant; and that the county court of Cumberland county erred in refusing to set aside the verdict of the jury, and to award a new trial upon the ground that the verdict is contrary to the law and the evidence, and that the said judgment must be reversed and annulled; and the case is remanded to the said county court with directions for further proceedings in conformity with this opinion.

JUDGMENT REVERSED.